IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                               CRIMINAL ACTION NO. 2:16-cr-00163-01

DAYMEON DAMAR JOHNSON,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Daymeon Damar Johnson's Motion for Compassionate Release. [ECF No. 174]. The court in deciding such motions will consider the following: whether the defendant has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," and the § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, a defendant must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

I.     Background

On April 4, 2017, I sentenced Mr. Johnson to 168 months of imprisonment followed by 3 years of supervised release after Mr. Johnson pleaded guilty to

distributing heroin. [ECF No. 115]. Mr. Johnson has filed for Compassionate Release three times before. [ECF Nos. 158, 164, 171]. I denied those motions for a failure to exhaust administrative remedies and a failure to demonstrate extraordinary and compelling reasons justifying his release. [ECF Nos. 162, 169, 173]. Most recently, Mr. Johnson re-filed for compassionate release on January 11, 2021. [ECF No. 174].

Mr. Johnson, who suffers from sickle cell disease, is currently imprisoned at FCI Butner Medium II in Butner, North Carolina. FCI Butner Medium II is a medium security correctional institution that currently houses 1,377 total inmates. *FCI Butner Medium II*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/btf/ (last visited Jan. 25, 2021). As of January 25, 2021, there are 85 active cases among prisoners and 13 active cases among staff at FCI Butner Medium II. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Jan. 25, 2021).

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's

role.").

For me to reduce Mr. Johnson's sentence under compassionate release, I must find that he has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," and find that his release is consistent with the § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); 18 U.S.C. § 3582. As I will explain, to find "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Johnson must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment. . . ." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020).

Mr. Johnson writes that he has "recently submitted his request to the warden of the facility" but does not provide the date that he submitted that most recent request to the warden. [ECF No. 174, at 2]. Instead, he asks me to ignore the

exhaustion requirement because of the dire nature of the COVID-19 pandemic at FCI Butner Medium II. I have repeatedly held that the statutory exhaustion requirement is not one that can be ignored. Mr. Johnson's argument is compelling, but because I would not be able to find that his release is supported by the § 3553(a) factors, I need not address the issue of exhaustion now.

### b) Extraordinary and Compelling Reasons

Once an inmate has satisfied administrative exhaustion, a court may reduce his sentence upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But the United States Court of Appeals for the Fourth Circuit has clarified that district courts are not bound by the enumerated extraordinary and compelling reasons listed in Guidelines § 1B1.13 because the Guidelines have not been updated since the passage of the First Step Act. *United States v. McCoy*, 981 F.3d 271, 283

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

(4th Cir. 2020) ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means the district court need not conform . . . to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."). "District Courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19." *See e.g.*, *Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL 1627331, at *9 (finding an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D. W. Va. June 12, 2020); *see also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 25, 2021) (listing

"immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

I join other courts in holding that I cannot find that "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. *See United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 25, 2021). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

If an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not

limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I have found before, and do so here again, that Mr. Johnson suffers from sickle cell disease which is on the CDC list. Further, Mr. Johnson is incarcerated at FCI Butner Medium II, which is in the midst of a COVID-19 outbreak. As recently as January 18, 2021, there were 221 active cases at FCI Butner Medium II. Based on the data provided by the BOP and compiled by the Department of Justice Inspector General, this outbreak began this month and quickly got out of control. *Active COVID-19 Cases Over Time*, Office of the Inspector General, https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_2/ (Last visited Jan. 25, 2021).

As of January 25, 2021, there are 85 active cases of COVID-19 among prisoners at FCI Butner Medium II. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Jan. 25, 2021). In its response, the Government indicates that BOP at FCI Butner Medium II has "effectively implemented the BOP-wide measures described previously to reduce his risk of contracting the virus." [ECF No. 176, at 15]. However, considering Mr. Johnson's sickle cell diagnosis and the extent of the current outbreak at FCI Butner Medium II despite BOP's efforts, Mr. Johnson has presented a strong argument in favor of his release. However, even though I may be able to find that extraordinary and

compelling reasons exist, I cannot find that the § 3553(a) factors justify Mr. Johnson's early release.

### c) The 18 U.S.C. § 3553(a) Factors

Had I found that Mr. Johnson had both exhausted his administrative remedies and demonstrated extraordinary and compelling reasons, I would then determine whether granting him compassionate release is consistent with 18 U.S.C. § 3553(a). Section 3553(a) directs courts to consider several factors when determining an appropriate sentence. These factors include the history and characteristics of the defendant; the nature and circumstances of the offense; the kinds of sentences available; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a).

Mr. Johnson was a part of a large drug conspiracy to bring heroin into West Virginia. I sentenced him to 168 months in prison to be followed by 3 years of supervised release. As of now, he has served less than one third of his sentence. While distribution of heroin is often considered a non-violent crime, Mr. Johnson has a record of trading heroin for guns. Possession of firearms in furtherance of a drug conspiracy, and the trading of drugs for firearms, means that Mr. Johnson's conviction might have been for a non-violent crime, but it was a crime that could have turned violent at any time. Mr. Johnson also has previous convictions for unlawful possession of firearms. [ECF No. 117, at 40].

In determining whether the public needs to be protected from further crimes

by Mr. Johnson, I considered his PATTERN score. PATTERN stands for Prisoner Assessment Tool Targeting Estimated Risk and Need. Each prisoner has a PATTERN score of either minimum, low, medium, or high. Amy B. Cyphert, *Reprogramming Recidivism: The First Step Act and Algorithmic Prediction of Risk*, 51 Seton Hall L. Rev. 331, 343 (2020). BOP calculates a PATTERN score by consulting a variety of static and dynamic factors such as criminal history, the crime of conviction, age, and what programs and educational opportunities the prisoner has utilized while incarcerated. *Id.* at 349. Mr. Johnson has a PATTERN score of Medium. [ECF No. 164, at 24]. This score, while not determinative, does indicate that there is a need to protect the public from possible future crimes.

Considering Mr. Johnson's criminal history, his PATTERN score, and the amount of his sentence remaining, a sentence reduction at this time would not reflect the seriousness of the offense, promote respect for the law, provide for just punishment, or afford adequate deterrence for Mr. Johnson.

### III. Conclusion

For the foregoing reasons, Defendant's motion for compassionate release and request for appointment of counsel [ECF No. 174] is **DENIED without prejudice.** The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: January 28, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE